# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>v.<br><br>1. David Salazar-Espiritu,<br>2. Cruz Ezequiel Castillo-Guerra,<br>3. Tomas Araiza, and,<br>    (a.k.a. "Jaime Jaime Rojas"; "Jaime Rojas Arellano")<br>4. Jaime Figueroa-Figueroa.<br>    (a.k.a. "Jose Manuel Gonzales") | CRIMINAL COMPLAINT<br><br>CASE NUMBER:  MJ-24-04262-PCT-CDB |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the date described in Attachment A in the County of Coconino in the District of Arizona and elsewhere, the defendants committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, Aid and Abet, in violation of Title 18, United States Code (U.S.C.) §§ 659 and 2, offense described as follows:

**See Attachment A, Description of Count**

I further state that I am a Special Agent for Homeland Security Investigations (HSI) and that this complaint is based on the following facts:

**See Attachment B, Statement of Probable Cause, Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

AUTHORIZED BY: Addison Owen and Travis L. Wheeler, AUSAs

Digitally signed by ADDISON OWEN
Date: 2024.07.29 15:51:43 -07'00'

TAZTEN W STARNES
Digitally signed by TAZTEN W STARNES
Date: 2024.07.29 15:31:16 -07'00'

Tazten Starnes, SA for HSI
Name of Complainant

Signature of Complainant

Sworn to telephonically before me

July 29, 2024                                          at    Flagstaff, Arizona
Date                                                        City and State

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge
Name & Title of Judicial Officer

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2024.07.29 16:56:38 -07'00'

Signature of Judicial Officer

CC:  USM & PTS

# ATTACHMENT A
# DESCRIPTION OF COUNT
## COUNT 1
### Theft from Interstate Shipment

On about July 16, 2024, in the District of Arizona and elsewhere, Defendants DAVID SALAZAR-ESPIRITU, CRUZ EZEQUIEL CASTILLO-GUERRA, TOMAS ARAIZA, and JAIME FIGUEROA-FIGUEROA knowingly aided and abetted known and unknown individuals in the possession of goods and chattels, to wit: Beats wireless earbuds, of a value in excess of $1000.00, which had been stolen from a J.B. Hunt tractor trailer truck while moving in interstate commerce from California to Arizona, knowing the said goods and chattels to be stolen.

All in violation of Title 18, United State Code, Sections 659 and 2.

## ATTACHMENT B

## STATEMENT OF PROBABLE CAUSE

I, Tazten Starnes, a Special Agent for Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since December 2018. I have a Bachelor of Science in Criminal Justice from the University of Toledo. Prior to my employment with HSI, I was employed as a United States Border Patrol Agent for approximately seven years. I am a law enforcement officer of the United States, and I am empowered by law to conduct criminal investigations, make arrests, and serve search and arrest warrants.

2. As a Special Agent with HSI, your Affiant investigates criminal violations of United States law, including import and export violations, controlled substances law violations, and money laundering violations. Your Affiant has participated in many investigations involving stolen vehicle organizations, theft ring investigations, possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. As an HSI Special Agent, your Affiant has been trained in conducting narcotics and money laundering investigations and received specialized training concerning violations of the Controlled Substances Act contained within Title 21 of the United States Code. I am currently assigned to the HSI Flagstaff Office located in Flagstaff, Arizona, where we investigate transnational criminal organizations to include money laundering and drug trafficking organizations operating throughout the United States.

3. By virtue of my employment as a Special Agent, your Affiant has performed various tasks, which include, but are not limited to:

   a. functioning as a surveillance agent, thus observing and recording movements of persons involved in violations of United States Code as well as violations of Arizona State law;

b. interviewing witnesses, confidential reliable informants (CIs) and sources of information (SOI) relative to the violations of United States Code as well as violations of Arizona State law;

c. functioning as a case agent, entailing the supervision of specific investigations involving various crimes throughout the United States; and

d. conducting complex investigations involving transnational criminal organizations committing various crimes throughout the United States.

4. I have consulted with other experienced investigators concerning the practices of transnational criminal organizations and the best methods of investigating them. In preparing this affidavit, I have conferred with other Special Agents and law enforcement officers. Furthermore, I have personal knowledge of the following facts or have learned them from the individual(s) mentioned herein.

5. Based on the below facts, your Affiant submits there is probable cause that David SALAZAR-Espiritu, Cruz Ezequiel CASTILLO-Guerra, Tomas ARAIZA, and Jaime Figueroa-FIGUEROA committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, Aid and Abet, in violation of 18 U.S.C. §§ 659 and 2.

## BACKGROUND

6. Over the past twenty years, several Transnational Criminal Theft Organizations (TCTOs) have been targeting warehouse and over the road carriers who are contracted to transport cargo all throughout the United States. These organizations consist primarily of Mexican citizens who operate out of Arizona and California.

7. These TCTOs are aware of the Federal Motor Carrier Safety Administration rules regarding commercial drivers. A commercial truck driver must not exceed an eleven-hour driving limit. After that time, the commercial driver must rest for ten consecutive hours. Commercial truck drivers will usually find the nearest and safest place to rest, which sometimes is a travel center, rest stop, or any space along their route which they can safely park their tractor trailer for ten hours. Commercial drivers will often park in rural or secluded areas for this mandated rest period.

8. TCTO members will scout high value merchandise by waiting outside of warehouse facilities that store and distribute electronics, tools, and apparel. TCTO members know that when a truck departs one of these warehouse facilities, they are likely to contain a full load of that commodity. The TCTO members then follow the tractor trailer until there is opportunity to either burglarize or rob the tractor trailer and its driver. Other ways TCTO members target tractor trailers are by scouting places where tractor trailers are frequently parked during off duty hours, including travel centers, rest areas and rural parking along interstate highways.

9. TCTO members will usually follow the tractor trailer with several vehicles, including passenger vehicles for surveillance, and box trucks or other tractor trailers for transportation of the stolen merchandise. Once an opportunity for burglary occurs, the TCTO members will burglarize or rob the target tractor trailer without regard to whether it is unoccupied or occupied, and regardless of whether the driver knows it is happening. Over the past twenty years, there have been hundreds of incidents reported where:

   a. TCTO members have held a tractor trailer driver at gun point while other members steal the contents of the target tractor trailer.
   b. TCTO members have stolen the entire target tractor trailer and taken it to another location to transfer the load of freight into a separate box truck or tractor trailer for transport.
   c. TCTO members have stolen the merchandise from a target tractor trailer while the tractor trailer is at a rest stop, travel plaza, or parked in a rural area along the interstate while the commercial driver is sleeping inside the cab of the tractor trailer.

10. Once TCTO members have successfully stolen merchandise from the target tractor trailer, that merchandise is usually transported to California where it is sold or fenced to wholesale online retailers such as third-party swap meets, or Amazon and eBay resellers.

**CURRENT INVESTIGATION**

11. On July 16, 2024, approximately 4:55 a.m., Winslow Police Department in Winslow, Arizona, received a call for service regarding a tractor trailer theft at the Flying J located at 400 Transcon Lane in Winslow, Arizona, and below is the information learned from Winslow Police Department detectives:

   a. Upon officers' arrival, they learned the driver and passenger of the tractor were pulling a trailer full of product and stopped at the Flying J Truck Stop to refuel and take a driving break.

   b. After the driver refueled the tractor trailer, they moved the tractor trailer closer to the store away from the fuel pumps. The driver and passenger entered the store to shower and use the restroom, leaving the tractor trailer unattended.

   c. Upon exiting the store after using the restroom, the passenger discovered that the tractor trailer was no longer parked in the same location and was missing from the parking lot.

   d. The passenger then reentered the Flying J store to ask the store clerk if employees moved the tractor trailer or if they towed or removed the tractor trailer. When the passenger learned that the tractor trailer was not moved or towed by Flying J employees, the passenger called Winslow Police Department to report the tractor trailer stolen.

   e. Later, the stolen tractor trailer was located approximately 2.5 miles away from the Flying J Travel Center on North Park Drive north of the Winslow hotel located at 2206 North Park Drive, Winslow, Arizona.

   f. Upon arrival at the stolen tractor trailer, it was learned that someone had overcame the starting mechanism on the tractor. Additionally, the trailer door had grinding wheel marks near the locking mechanism of the trailer and approximately half of the trailer was empty of product.

12. Your Affiant learned the following from Special Agent Chris Foster:

    a. J.B. Hunt Corporate Investigations, Senior Investigator Jeff Ferber indicated there was a recent theft in Winslow, Arizona.

    b. Investigator Ferber indicated the thieves had stolen a tractor and trailer from the Flying J and the merchandise had a tracking device embedded within the product. Presently, the tracking showed the product was moving westbound on Interstate 40 away from Winslow, Arizona, towards Flagstaff, Arizona.

    c. Investigator Ferber indicated that the trailer contained unreleased Apple Air Pods.

    d. Investigator Ferber indicated that during a review of cameras inside the tractor, it appeared that a white minivan and a large white box truck were involved in the theft of the tractor and the merchandise inside the trailer.

13. Coconino County Sheriff's Office (CCSO) Deputy Curtis Peery was then given the above information, and below are the details of his subsequent investigation:

    a. CCSO Deputy Peery directed another CCSO Deputy to monitor westbound traffic on Interstate 40 near Williams, Arizona, and for Arizona Department of Public Safety (AZ-DPS) Troopers to monitor westbound traffic on Interstate 40 near Seligman, Arizona.

    b. A short time later, the AZ-DPS Trooper located a white van matching the description provided by CCSO Deputy Peery. The AZ-DPS Trooper informed CCSO Deputy Peery that the white van was following a white box truck. The AZ-DPS Trooper conducted a traffic stop on the white van bearing California license plate 9MMG466 at approximately mile post 122 on west bound Interstate 40.

    c. During the traffic stop of the white van, AZ-DPS Troopers identified the driver of the white minivan as Jaime Figueroa-FIGUEROA and passengers

      Cruz Ezequiel CASTILLO-Guerra, and Tomas ARAIZA.

d. CCSO Deputy Peery then located the large white box truck that was being followed by the white van westbound on Interstate 40.

e. Investigator Ferber determined that the stolen merchandise was in the same proximity of CCSO Deputy Peery and the white box truck.

f. CCSO Deputy Peery followed the large white box truck bearing California license plate 61178N3 until a second CCSO Deputy was closer to provide backup.

g. CCSO Deputy Peery and CCSO Deputy Feldman conducted a traffic stop on the white box truck at mile post 115 on westbound Interstate 40.

h. CCSO Deputy Peery asked the driver of the white box truck, later identified as David SALAZAR-Espiritu, to exit the vehicle.

i. CCSO Deputy Peery asked SALAZAR what was in the rear of the vehicle and SALAZAR responded that he did not know what was in the back of the box truck and it was his friend's truck.

j. During the traffic stop, Investigator Ferber informed CCSO Deputy Peery that the geolocation of the stolen merchandise did not move.

k. CCSO Deputy Peery waited for an AZ-DPS Trooper to bring a bolt cutter to the traffic stop and upon their arrival, the lock was cut on the rear of the box truck and the back gate was opened.

l. CCSO Deputy Peery observed numerous boxes with shipping labels in the rear of the white box truck, it appeared that the boxes were thrown into the back of the box truck and one of the pallets of merchandise was tipped over.

m. The merchandise was not secured in a normal way according to the Department of Transportation standards. The merchandise labels on the box showed lithium batteries, which must be secured in a particular way

      inside a vehicle for commercial transportation and a hazmat placard should also be shown on the exterior of the vehicle.

    n. CCSO Deputy Feldman placed SALAZAR under arrest and then requested that AZ-DPS Troopers place CASTILLO, ARAIZA, and FIGUEROA under arrest.

    o. While arresting the three subjects from the white minivan, AZ-DPS troopers noticed several tools commonly used to break into metal containers, an angle grinder, angle grinder cutting disks, bolt cutters, a master lock with keys, and a semi-trailer seal. The angle grinder tool appeared to be the same type of tool that would make the grinding marks observed on the tractor trailer.

    p. An AZ-DPS trooper and Deputy Feldman transported SALAZAR, CASTILLO, ARAIZA, and FIGUEROA to the Coconino County Jail.

    q. The white box truck and white minivan was secured and transported to the Seligman, Arizona DPS station until the Winslow Police Department arranged a tow truck to pick up both vehicles.

14. Your Affiant learned there was a driver facing camera and forward-facing camera inside the stolen tractor. Your Affiant reviewed still images of the driver facing camera and at approximately 4:19 a.m., a male, later identified as CASTILLO, can be seen opening the driver's side door and reaching down making some unknown adjustments. Based on the damage to the ignition and passenger side lock, it was determined that CASTILLO was breaking the ignition locking mechanism and started the tractor.

15. Your Affiant reviewed additional still images of the driver facing camera and learned that after CASTILLO was captured on the driver facing camera starting the tractor, ARAIZA entered the cab of the tractor and drove the tractor to the location where the merchandise was offloaded into the white box truck.

16. Winslow Police Department Detectives obtained a warrant that was signed by

a Navajo County Superior Court judge based on the above facts, authorizing law enforcement to conduct a search of the white box truck and white minivan.

17. During the search of the white box truck, Winslow Police Department Detectives discovered boxes with shipping labels identifying the merchandise as two different types of wireless ear buds: Product MK2F3LL/A which are Beats Fit Pro True Wireless Noise Cancelling In-Ear Earbuds with a retail value of $199.95 per box, and product MY582LL/A, which are Beats Powerbeats Pro Wireless Earbuds with a retail value of $249.95 per box.

18. The approximate value of the total product stolen from the tractor trailer and recovered in the white box truck was over $1,500,000.

### Cruz Ezequiel CASTILLO-Guerra

19. Law enforcement checks show that CASTILLO was previously removed from the United States to Mexico via expedited removal in 2019.

20. When CCSO Deputies made contact with CASTILLO, they questioned him regarding his biographical information. CASTILLO stated that he is from Tepic, Nayarit, Mexico.

21. When CCSO Deputies read CASTILLO his *Miranda* warnings, CASTILLO invoked, declining to speak further with law enforcement. No further questions were asked of CASTILLO.

### Tomas ARAIZA

22. Law enforcement checks of ARAIZA (and known aliases) show that he was naturalized as a United States Citizen in November 2002.

23. Criminal history checks on ARAIZA show that he has been arrested several times for possession of weapons, assault with a deadly weapon, possession of controlled substances, battery, receiving stolen property and vehicle theft. ARAIZA currently has a non-extraditable warrant out of California for vehicle theft.

24. When CCSO Deputies made contact with ARAIZA, they questioned him regarding his biographical information. ARAIZA stated that he is a United States Citizen and is presently homeless living in California. After being read his *Miranda* warnings,

ARAIZA agreed to speak with law enforcement without an attorney present. The interview was video recorded. Below is a summary of the interview:

    a. ARAIZA stated that he was brought to Arizona and admitted that he drove the tractor trailer from the Flying J Truck Stop to near a Maverick gas station.

    b. ARAIZA stated that one of the other guys started the tractor for him. A picture was shown to ARAIZA, and he identified the person who started the tractor was CASTILLO.

    c. Law enforcement showed ARAIZA a picture of him in the cab of the stolen tractor and ARAIZA confirmed that the person in the picture was him.

    d. ARAIZA also said that CASTILLO was the person that instructed him to move the tractor trailer from the Flying J Truck Stop.

    e. ARAIZA stated that FIGUEROA was the driver of the white minivan, and that FIGUEROA was also moving the merchandise from the tractor trailer to the white box truck.

    f. ARAIZA said that he was not told about being paid but he did expect to be paid something.

### David SALAZAR-Espiritu

25. Law enforcement checks show that SALAZAR is a citizen of Mexico and present in the United States illegally. Immigration Enforcement Removal Operations Deportation Officer telephonically conducted an immigration inspection on SALAZAR who stated that he is a citizen of Mexico, and he does not have any pending application or petitions with the United States Citizenship and Immigration Services (UCSIS) to legally be present in the United States.

26. Criminal history checks on SALAZAR identified multiple prior arrests for malicious mischief, assault, domestic violence, and domestic assault.

27. When CCSO Deputies made contact with SALAZAR, they questioned him regarding his biographical information. SALAZAR stated that he is from Jalisco, Mexico

and is currently living in California. CCSO Deputies read SALAZAR his *Miranda* warnings, and SALAZAR agreed to speak with law enforcement without a lawyer present. The interview was video recorded. Below is a summary of the interview:

a. SALAZAR stated that a friend, "Jaime," asked him if he would drive a truck for him.

b. SALAZAR stated that FIGUEROA was driving the white minivan and told him to stay near him while driving the white box truck.

c. SALAZAR said that he drove the white box truck from California to Arizona and was just following the white van when they went to Winslow, Arizona.

d. SALAZAR stated that he was not sure why they were driving to Winslow, Arizona and did not know they were going to rob a truck. SALAZAR claimed that he was not in the box truck when it was being loaded and was in the Maverick store.

e. SALAZAR said that the burglary occurred around 5:00 a.m. because it was still dark outside.

f. SALAZAR stated that some of the guys came into the Maverick store and told him it was time to go.

g. SALAZAR said that when he went to the box truck, he noticed it was backed up to a tractor trailer and he was told to drive.

h. SALAZAR stated that the only person he knew there was "Jaime." When law enforcement showed SALAZAR a picture of ARAIZA, he claimed that his name was "Jaime." He said that he has only known "Jaime" for about two weeks.

i. Law enforcement showed SALAZAR a picture of CASTILLO, and SALAZAR stated that did not know him other than meeting him in the white minivan. SALAZAR stated that he thought that they were going to

drive to San Fernando, California and that he was going to be paid $4,000 for driving.

### Jaime Figueroa-FIGUEROA

28. Law enforcement checks on FIGUEROA (and known aliases) provided no information as to FIGUEROA's alienage.

29. Criminal history checks on FIGUEROA showed that he has numerous prior felony convictions, primarily narcotics related.

30. When CCSO Deputies made contact with FIGUEROA, they questioned him regarding his biographical information. FIGUEROA stated that he is a United States Citizen and is presently homeless living in California.

31. CCSO Deputies read FIGUEROA his *Miranda* warnings, and FIGUEROA agreed to speak with law enforcement without a lawyer present. The interview was video recorded. Below is a summary of the interview:

   a. FIGUEROA stated that he was driving the white minivan with ARAIZA and CASTILLO.
   b. Law enforcement showed a picture of ARAIZA and CASTILLO to FIGUEROA, and he identified each one by their name.
   c. FIGUEROA said that ARAIZA was homeless, and he met him in May while robbing other semi-truck tractor trailers.
   d. FIGUEROA admitted to robbing other semi-truck tractor trailers in the past. FIGUEROA stated that, about a month ago, he was involved in the theft of approximately 50 televisions.
   e. FIGUEROA stated that they drove on Interstate 40 towards Kingman, Arizona.
   f. FIGUEROA said that he was just a driver for the burglary crew.
   g. FIGUEROA identified CASTILLO as the person that started the tractor, and ARAIZA as the person that drove the tractor trailer out of the Flying J

       Truck Stop parking lot.

h. FIGUEROA stated that they drove from the Flying J Truck Stop to the next exit and the other guys started unloading the tractor trailer's contents into the white box truck.

i. FIGUEROA claimed that he did not help unload the merchandise and was just waiting for them to finish, so he could drive them back.

j. FIGUEROA said that someone changed the license plates on the white minivan while at they were at the Maverick gas station in Winslow, Arizona.

k. FIGUEROA stated that the plates belonged to the van but were from the previous year and they changed them in case there was video footage.

l. FIGUEROA said that he was expecting to get paid $3,000 for this job. FIGUEROA stated that he had been paid $500 for his role in the previous job.

m. FIGUEROA claimed that he was going to be paid more for this job because it was in Arizona and during the previous job, they only were able to steal 50 televisions.

n. FIGUEROA stated that he normally does not see or know what product is being stolen – all he does is drive the van.

o. FIGUEROA said that they used the white box truck both times they stole product.

## CONCLUSION

    32. For the foregoing reasons, your Affiant submits that there is probable cause to believe David SALAZAR-Espiritu, Cruz Ezequiel CASTILLO-Guerra, Tomas ARAIZA, and Jaime Figueroa-FIGUEROA committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, Aid and Abet, in violation of Title 18, United States Code (U.S.C.) §§ 659 and 2.

33. I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.

**TAZTEN W STARNES**
Digitally signed by TAZTEN W STARNES
Date: 2024.07.29 15:33:20 -07'00'

TAZTEN STARNES
Special Agent
Homeland Security Investigations

Sworn to and subscribed telephonically and electronically this __29__ day of July, 2024.

**Camille D. Bibles**
Digitally signed by Camille D. Bibles
Date: 2024.07.29 16:50:58 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge